IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**NATESIA TAYLOR**                                                     **PLAINTIFF**

v.                                                  CIVIL ACTION NO. 3:23-cv-598-CWR-LGI

**WENDELTA, INC.**                                                     **DEFENDANT**
                                                               **(JURY TRIAL DEMANDED)**

## COMPLAINT

Natesia Taylor worked at Wendy's. Her doctor placed her on a 20-pound lifting restriction and a two-hour-at-a-time standing restriction. This was because of certain medical conditions she had, including pregnancy. Wendy's falsely stated it could not reasonably accommodate this restriction and fired Taylor. For these reasons, COMES NOW THE PLAINTIFF and alleges as follows:

## PARTIES

1. Plaintiff Natesia Taylor is an adult resident of Mississippi.

2. Ms. Taylor is a woman.

3. Defendant Wendelta, Inc. is a corporation doing business in the state of Mississippi.

4. Wendelta can be served via its registered agent, Cogency Global Inc., 248 E. Capitol St. Suite 840, Jackson MS 39201.

5. Wendelta is a wholly-owned subsidiary of Carlisle Corporation.

6. Wendelta operates over 160 Wendy's franchises.

7. Wendelta has over $253 million in annual revenue.

8. Wendelta has more than five hundred employees.

9. Wendelta has more than 50 employees within a 75-mile radius of the worksite here.

1

10. Wendelta is an "employer" as defined by Title VII of the Civil Rights Act of 1964, as amended, the Americans with Disabilities Act of 1990, as amended, and the Family Medical Leave Act, as amended.

11. Wendelta knows it is required by law to reasonably accommodate disabilities and cannot discriminate against pregnant women.

12. Ms. Taylor was an "employee" of Wendelta as defined by Title VII, the ADA, and the FMLA.

13. During her time working for Wendelta, Ms. Taylor was covered by Title VII, the ADA and the FMLA.

## JURISDICTION, VENUE, EXHAUSTION, AND JURY DEMAND

14. Jurisdiction is proper in this honorable Court under 28 U.S.C. § 1331 because this claim arises under federal law, specifically, Title VII of the Civil Rights Act of 1964, as amended, the Americans with Disabilities Act of 1990, as amended, and the Family and Medical Leave Act of 1993.

15. Venue is proper in this honorable Court under 28 U.S.C. § 1391 because all events described below took place in and around Warren County, Mississippi.

16. Ms. Taylor has filed a charge of discrimination with the Equal Employment Opportunity Commission concerning the allegations in this complaint.

17. The charge was filed on April 12, 2022.

18. The charge number was 423-2022-00884. Exhibit 1

19. Her charge concerns the discrimination, harassment, failure to accommodate, and retaliation Ms. Taylor experienced from November 29, 2021, through December 1, 2021.

20. Ms. Taylor filed her charge within 180 days of the events alleged in that charge.

21. On or around July 7, 2023, Ms. Taylor obtained a notice of right to sue from the EEOC for her charge. Exhibit 2.

22. Ms. Taylor files this complaint on September 15, 2023.

23. This is within 90 days of receipt of the right-to-sue letter.

24. Ms. Taylor has timely and fully exhausted her administrative remedies.

25. Plaintiff demands a trial by jury on all issues so triable.

## FACTS

26. Ms. Taylor worked for Wendelta as a cashier at their Wendy's restaurant location in Vicksburg, Mississippi.

27. Ms. Taylor had other family members that worked at this Wendy's location as well.

28. One of Ms. Taylor's supervisors was Sheri Hernton, the general manager.

29. A higher-level supervisor was Don LNU.

30. Ms. Taylor has certain medical conditions which, as of November 29, 2021, included pregnancy.

31. Ms. Hernton learned about Ms. Taylor's medical conditions while Ms. Taylor was working at Wendelta.

32. Initially, Ms. Hernton had been friendly with Ms. Taylor, but her attitude changed when she learned of the conditions.

33. Ms. Hernton treated Ms. Taylor worse than colleagues. This included cursing at her and verbally abusing her frequently. It also included denying her breaks and making her work on her hands and knees on the floor.

34. On November 29, 2021, Ms. Taylor was in a doctor's appointment for treatment with Dr. Thomas Weeks, OBGYN.

35. After explaining her symptoms to Dr. Weeks, he believed her working conditions at Wendelta increased her risk of premature labor and other medical problems.

36. In the middle of the appointment, Ms. Taylor received a call from Ms. Hernton. Ms. Taylor answered and told Ms. Hernton that she was still in her appointment.

37. Ms. Hernton berated her and asked loudly and repeatedly when she would be done.

38. Ms. Taylor told Ms. Hernton that she did not know when she would be done and could not rush the process.

39. Ms. Hernton hung up the phone.

40. This conversation was overheard by the doctor and the nurse.

41. At the end of the appointment, Ms. Taylor's doctor wrote out work restrictions. These restrictions read: "Due to pregnancy, limit lifting 20# prolonged standing > 2hr @ a time."

42. When she went into work that day, Ms. Taylor presented these restrictions to Ms. Hernton.

43. The following morning, November 30, 2021, Ms. Hernton called Ms. Taylor and told her she would not be able to follow the doctor's orders.

44. After this conversation, Ms. Taylor called Don LNU to discuss it, and he asked her to call back later because he was in a meeting.

45. Thereafter Ms. Hernton called Ms. Taylor and was angry that she had called Don to discuss her accommodation request.

46. Ms. Taylor called Don again later that day. She asked him to help her keep her job. She told him that Ms. Hernton was harassing her and her unborn child, and that she thought Ms. Hernton was trying to get her fired. She asked Don to put her on light duty, or to do

4

something else to release some of the stress on her. Don said he would talk to HR and see what he can do.

47. The next morning, December 1, 2021, Ms. Hernton called and told Ms. Taylor that HR said they could not accommodate her, and that she was out of a job. Ms. Hernton told Ms. Taylor that she could apply back for a job when she is released with no restrictions.

48. Ms. Hernton called Don, and Don confirmed what Ms. Taylor said.

49. Ms. Taylor's medical conditions substantially interfered with her major life activities of walking, lifting, performing manual tasks, and working.

50. Ms. Taylor's medical conditions were a disability under the ADA.

51. Alternatively, Ms. Taylor was regarded as disabled by Wendelta under the ADA.

52. To protect her pregnancy, Ms. Taylor requested accommodations based on her physician's recommended work restrictions.

53. Requesting accommodations is protected activity under the ADA.

54. Wendelta denied Ms. Taylor's requested accommodations.

55. The accommodations were reasonable.

56. Ms. Taylor did not need to lift 20 lbs unassisted in order to perform the essential functions of her job.

57. Ms. Taylor did not need to stand for more than two hours continuously in order to perform the essential functions of her job.

58. She could perform some or all of her job from a chair.

59. She could perform her job standing with breaks to sit for a spell every two hours.

60. She could perform her job with limited unpaid leave when necessary.

61. Wendelta never informed or notified Ms. Taylor of her rights under the FMLA.

62. On information and belief, Wendelta granted accommodations to other non-pregnant employees.

63. On information and belief, Wendelta granted accommodations to other non-disabled employees.

64. Ms. Hinton harassed Ms. Taylor on the basis of her sex (pregnancy).

65. Ms. Hinton did not harass non-pregnant employees.

66. Ms. Hinton harassed Ms. Taylor on the basis of her disability.

67. Alternatively, Ms. Hinton harassed Ms. Taylor because she regarded her as disabled.

68. Ms. Hinton did not harass non-disabled employees.

69. Wendelta discriminated against Ms. Taylor on the basis of her sex.

70. Wendelta discriminated against Ms. Taylor on the basis of her disability.

71. Wendelta terminated Ms. Taylor on the basis of her pregnancy.

72. Wendelta terminated Ms. Taylor on the basis of her disability.

73. Through Ms. Taylor's termination, Wendelta retaliated against her on the basis of her request for reasonable accommodation.

## CAUSES OF ACTION

COUNT I: SEX DISCRIMINATION UNDER TITLE VII

74. Plaintiff incorporates all allegations set forth in all other sections of this complaint.

75. Under Title VII, it is unlawful for Wendelta to discriminate against an employee because of that employee's sex (pregnancy).

76. Here, Wendelta discriminated against Ms. Taylor through its refusal to accommodate her physician-ordered restrictions.

77. Wendelta further discriminated against Ms. Taylor by terminating her on the basis of her sex.

78. With this discrimination, Wendelta violated the law.

79. In doing so, Wendelta harmed Ms. Taylor.

COUNT II: DISABILITY DISCRIMINATION UNDER THE ADA ACT

80. Plaintiff incorporates all allegations set forth in all other sections of this complaint.

81. Under the ADA, it is unlawful for Wendelta to discriminate against an employee because of that employee's disability.

82. Here, Ms. Taylor's high-risk pregnancy and/or related conditions were a disability.

83. Alternatively, Ms. Taylor's pregnancy and/or related conditions were regarded as a disability by Wendelta as defined under the ADA.

84. Here, Wendelta discriminated against Ms. Taylor through its refusal to accommodate her physician-ordered restrictions.

85. Wendelta further discriminated against Ms. Taylor by terminating her on the basis of her disability.

86. With this discrimination, Wendelta violated the law.

87. In doing so, Wendelta harmed Ms. Taylor.

COUNT III: SEXUAL HARASSMENT (PREGNANCY) UNDER TITLE VII

88. Plaintiff incorporates all allegations set forth in all other sections of this complaint.

89. Under Title VII, it is unlawful for Wendelta to require an employee to work in a hostile work environment based on an employee's sex.

90. Here, harassment created a hostile work environment based on Ms. Taylor's sex (pregnancy).

91. With this harassment, Wendelta violated the law.

92. In doing so, Wendelta harmed Ms. Taylor.

## COUNT IV: DISABILITY HARASSMENT UNDER THE ADA

93. Plaintiff incorporates all allegations set forth in all other sections of this complaint.

94. Under the ADA, it is unlawful for Wendelta to require an employee to work in a hostile work environment based on an employee's disability.

95. Here, Ms. Taylor's high-risk pregnancy and/or related conditions were a disability.

96. Alternatively, Ms. Taylor's pregnancy and/or related conditions were regarded as a disability by Wendelta as defined under the ADA.

97. Harassment created a hostile work environment based on Ms. Taylor's disability.

98. With this harassment, Wendelta violated the law.

99. In doing so, Wendelta harmed Ms. Taylor.

## COUNT V: RETALIATION UNDER THE ADA

100. Plaintiff incorporates all allegations set forth in all other sections of this complaint.

101. Under the ADA, it is unlawful for Wendelta to retaliate against an employee due to that employee's involvement in a protected activity.

102. Here, Ms. Taylor engaged in protected activity by requesting accommodation for her disability.

103. Ms. Taylor engaged in further protected activity by reaching out to Don about the issues with her supervisor.

104. Wendelta retaliated against Ms. Taylor via termination in response to Ms. Taylor's protected activity.

105. Through this retaliation, Wendelta violated the law.

106. In doing so, Wendelta harmed Ms. Taylor.

## COUNT VI: FAILURE TO ACCOMMODATE DISABILITY UNDER THE ADA

107. Plaintiff incorporates all allegations set forth in all other sections of this complaint.

108. Plaintiff requested reasonable accommodation for her disability.

109. Under the ADA, Defendant was required to engage Plaintiff in an interactive process to try to accommodate her disability.

110. Defendant is required to reasonably accommodate Plaintiff's disabilities.

111. Defendant failed to engage Plaintiff in any such interactive process.

112. Defendant failed to reasonably accommodate Plaintiff's disability.

113. In doing so, Defendant violated the ADA and harmed the plaintiff.

## COUNT VII: FMLA INTERFERENCE

114. Plaintiff incorporates all allegations set forth in all other sections of this complaint.

115. Under the FMLA, it is unlawful for Wendelta to interfere with an employee's attempts to exercise rights under the FMLA.

116. Here, Ms. Taylor invoked her right to protected leave under the FMLA in two ways.

117. First, she took leave which should have been considered FMLA protected for doctor's appointments connected with her pregnancy and other conditions.

118. Second, assuming her restrictions could not be accommodated, twelve weeks of FMLA leave still should have been available to preserve Ms. Taylor's job when she was placed on restrictions by her doctor.

119. Wendelta failed to inform or notify Ms. Taylor about her rights to protected leave under the FMLA.

120. Ms. Hinton yelled at Ms. Taylor during a doctor appointment and interfered with her leave and treatment.

121. Through all the above, Wendelta interfered in violation of the FMLA.

122. In doing so, Wendelta harmed Ms. Taylor.

COUNT VIII: FMLA RETALIATION

123. Plaintiff incorporates all allegations set forth in all other sections of this complaint.

124. Under the FMLA, it is unlawful for Wendelta to retaliate against an employee for attempting to exercise their rights under the FMLA.

125. Here, Ms. Taylor attempted to exercise her rights under the FMLA when she informed Wendelta that she needed occasional leave for her pregnancy and doctor visits.

126. Wendelta retaliated against Ms. Taylor through harassment.

127. Wendelta further retaliated against Ms. Taylor by firing her because of her attempt to exercise her FMLA rights.

128. Through this retaliation, Wendelta violated the law.

129. In doing so, Wendelta harmed Ms. Taylor.

REMEDIES

130. Plaintiff seeks all remedies available, including but not limited to the following:

   a. Back pay;

   b. Reinstatement and/or front pay, as appropriate;

   c. Liquidated damages;

   d. Compensatory damages for emotional distress and any other non-pecuniary harms flowing from Defendant's unlawful actions;

e. Consequential damages and any other pecuniary harms flowing from Defendant's unlawful actions;

f. Punitive damages commensurate with the misconduct and necessary to deter future violations of the law;

g. Pre- and post-judgment interest;

h. Attorney fees;

i. Costs;

j. An injunction curing Defendant's unlawful actions and prohibiting any future similar actions;

k. Notice given to all employees regarding the violations found by this Court, and notifying such employees of the order entered proscribing any future similar violations;

l. Any other equitable relief as this honorable Court deems appropriate.

m. A final judgment declaring that Defendant's treatment of Plaintiff was unlawful; and/or,

n. Any other relief available under any applicable principle of law or equity.

Respectfully submitted on September 15, 2023,

Natesia Taylor

LEAD COUNSEL TO BE NOTICED: */s/ Joel Dillard*  
Joel Dillard (MSB # 104202)  
JOEL F. DILLARD, P.A.  
775 North Congress Street  
Jackson, Mississippi 39202  
(601) 509-1372, ext. 2  
joel@joeldillard.com